UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THE CREELGROUP, a
Nebraska Corporation,

    Plaintiff,                                           Case No. 11-13798

v.                                                         HON. AVERN COHN

NGS AMERICAN, INC.,
a Michigan corporation,
TRUSTCO INC., a Delaware
Corporation, and SCOTT MCLELLAN,

    Defendants.

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (DOC. 13)

This is a tortious interference and breach of contract case. Plaintiff, The Creelgroup, Inc. (Creel), says that defendants NGS American, Inc. (NGS) and its corporate parent, Trustco Holdings, Inc. (Trustco),[1] breached their contract to pay commissions to Creel. In addition, Creel says that Scott McClellan (McClellan), a former NGS employee, tortuously interfered with its contractual rights and business expectancy by stealing a customer, Oakwood Hospital (Oakwood). The complaint is in three counts: Count (I) Tortious Interference with a Contract (McClellan); Count (II) Tortious Interference with a Business Expectancy (McClellan); and Count (III) Breach of Contract (NGS and Trustco).

---

[1] The amended complaint's allegations do not support Trustco as a proper party to this case. The only allegation against Trustco is that it controls the management and operation of NGS. There are no factual allegations to support this assertion nor does Trustco appear to have a presense with the events underlying the complaint.

Now before the Court is defendants' Motion to Dismiss the First Amended Complaint. (Doc. 9). For the reasons that follow, the motion is **GRANTED**. This case is **DISMISSED**.

## I. Background

### A. Oakwood Hospital

The material facts as gleaned from the parties' papers follow. This case is based on a business dispute. Geoff Brieden, a former Creel employee, left the company and took Oakwood's business with him. Creel is a healthcare consulting firm and broker, which provides services to employers with self-funded medical benefit plans. Creel assists its clients with selection and oversight of third-party plan administrators, such as NGS. Creel began working with Oakwood in 2000. In 2005, Creel brokered a deal for Oakwood under which NGS administered its healthcare plan. NGS paid Creel commissions of two dollars ($2) per employee per month.

Creel was not a party to the first contract between Oakwood and NGS. Although, Creel appears on subsequent addendums to the contract under the heading: "[i]n the event that fees or commissions are payable to an agent by NGS under this addendum, such fees or commissions will be mailed to [Creel]." Whether or not Creel was a party to the contracts between Oakwood and NGS, and therefore entitled to commissions, is at the heart of the present dispute.

After the initial contract in 2005, NGS and Oakwood renewed their agreement in 2008 for an additional thirty-six (36) months. The 2008 renewal, called the Second Amendment to Service Agreement, included the same reference to Creel as cited above. Creel expected to receive commissions for the entire thirty-six month (36) term.

However, Creel stopped receiving payments from NGS in October 2008 when Brieden left Creel to form his own firm (called Kane Atwood) and took Oakwood's business with him. Subsequently, NGS and Oakwood negotiated a new contract that listed Kane Atwood as the commission agent.

### B. Brieden

Prior to his departure, Creel employed Geoff Brieden, previously an employee of NGS, as its national sales manager. One of Brieden's duties was to provide in person services to Oakwood. The employment relationship between Creel and Brieden did not work out. Brieden formed, Kane Atwood, which subsequently replaced Creel as NGS' commission agent. That replacement was the subject of a similar lawsuit before this Court, *Creelgroup v. Brieden*, no. 09-12493, which the parties resolved and dismissed by stipulation. Creel says that McCellan began working on behalf of Kane Atwood during his employment by NGS and assisted Brieden's efforts to take Oakwood's business from Creel.

### C. McClellan

In support of its allegation that McClellan assisted Brieden, Creel notes that Brieden established a Kane Atwood email address for McClellan during his employment at NGS. Further, Creel alleges that McClellan "intentionally, willfully, unlawfully, without justification, with malice, and in bad faith, induced contributed to, participated in, and caused the unlawful breach of the 2005 Agreement and the 2008 Second Amendment among Oakwood, NGS and Creelgroup." Beyond this allegation, it is unclear what role, if any, McClellan played in the scenario of this case.

## II. Motion to Dismiss

The defendants filed a motion to dismiss arguing that Creel is a stranger to the contract between NGS and Oakwood and therefore cannot maintain a claim for breach of contract. McClellan argues that Creel's allegations of tortious interference as to Counts (I) and (II) are insufficient as a matter of law and therefore should be dismissed.

## III. Matters Outside the Pleadings

Both NGS and Creel presented documents outside of the pleadings, including the contracts between NGS and Oakwood. FED. R. CIV. P. 10(c) provides that a written instrument attached to a pleading is part of the pleading for all purposes. Creel attached the contracts to its complaint; therefore, the Court will consider the contracts as part of the pleadings for purposes of the motion to dismiss.

## IV. Legal Standard

A motion to dismiss pursuant to FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombley,* 550 U.S. 544, 545 (2007). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio,* 502 F.3d 545, 548 (6th Cir.2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Aschcroft v. Iqbal*, 556 U.S. 662 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* Thus, "a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.

While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 1949 (internal quotation marks and citation omitted).

## V. Discussion

### A. Tortious Interference with Contract/Expectancy: McCellan

#### 1. Prima Facie Case

A prima facie case of tortious interference with contract or expectancy requires proof of the following: (1) the existence of a valid business relationship, expectancy, or contract (2) knowledge of the relationship, expectancy, or contract by the interferer, (3) an intentional and wrongful interference inducing or causing a breach or termination of the relationship, expectancy or contract, and (4) resultant damage to the party whose relationship, expectancy or contract was disrupted. *CH Holding Co. v. Miller*, No. 293686, 2011 WL 5008573 (Mich. Ct. App. Oct. 20, 2011) (internal citation omitted).

#### 2. Creel's Allegations

Under FED. RULE OF CIV. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[D]etailed factual allegations" are not required, *Twombly*, 550 U.S. at 555. However, to state a claim for relief the complaint must allege sufficient facts to state a plausible claim. The factual

5

allegations made against McClellan are sparse.[2] Creel says that McClellan knew of Brierden's impending departure from Creel and that Brierden created a Kane Atwood email address for McClellan. The remaining allegations consist of conclusory statements that recite elements of tortious interference with contract.

Creel has not alleged any facts that would raise its right to relief above the speculative level. *Iqubal*, 556 U.S. at 663, instructs that conclusory statements and threadbare recitals of the elements of a cause of action are insufficient to survive a motion to dismiss. As such, the amended complaint does not create a plausible claim for tortious interference with contract or business expectancy.

### B. Breach of Contract: NGS/Trustco

### 1. Party to Contract

Next, Creel argues that it was a party to the 2005 and 2008 contracts between Oakwood and NGS. However, the fact that the document names Creel and bears the signature of its officer does not create a contractual relationship. In Michigan, the formation of a contract requires (1) competent parties; (2) proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Thomas v. Leja*, 187 Mich. App. 418, 422 (1991).

Creel's claim fails on the fifth element, mutuality of obligation. The contracts between Oakwood and NGS do not create an obligation for Creel to discharge. The contract merely requires that Oakwood pay commissions of two dollars ($2) per

---

[2] The First Amended Complaint removes the allegation that at all times McClellan was acting within the scope of his duties at NGS and asserts the opposite: at all times McClellan acted outside the scope of his employment." The parties dispute whether the complaint was an admission and whether or not amending the complaint revoked the admission. Because Creels claims of tortious interference with contract fail on other grounds it is unnecessary for the Court to resolve this question.

employee per month (pepm) to NGS. The contract says that if NGS owes fees or commissions they will be mailed to Creel. Nothing in the language of the contract creates an obligation for Creel to do anything. As such, Creel did not form a contract with NGS or Oakwood.

## 2. Intended or Incidental Beneficiary

Although Creel is not a party to the agreements between NGS and Oakwood, Michigan law allows a third-party beneficiary of a contract to enforce its terms. "Third-party beneficiary status requires an express promise to act to the benefit of the third party; where no such promise exists, that third party cannot maintain an action for breach of the contract. Thus, a person who incidentally benefits from the performance of some duty required under a contract has no rights under the contract." *Dynamic Const. Co. v. Barton Malow Co.*, 214 Mich. App. 425 (Mich. Ct. App. 1995) (citations omitted). Therefore, it Creel can only enforce the contract if it was the intended beneficiary. However, NGS did not make an express promise to act for the benefit of Creel thus, Creel is not an intended beneficiary of the contract. Creel benefits from performance of the contract as an incidental beneficiary.

There are several instructive cases involving sub-contractors attempting to assert standing as a third-party beneficiary under a contact between the general contractor and landowner that illustrate the difference between an intended an incidental beneficiary. For example, in *Dynamic Const., 214 Mich. App.* at 429, a general contractor attempted to assert a breach of contract claim against the project manager. The contract, however, was between the project manager and property owner. The court of appeals observed: "[c]ontractors, subcontractors, and their employees are

generally held not to be the third-party beneficiaries of the contract between the general or supervisory contractor and the project owner." "In general terms, a contractor is an incidental beneficiary absent clear intent manifested in the owner-architect contract to the contrary." *Id*. The contract between NGS and Oakwood manifests no such intent.

Like the subcontractor in *Dynamic*, Creel derives a benefit from performance of the contract, but is neither a party to the contract nor a third-party beneficiary, as such, it cannot enforce the terms of the agreement between NGS and Oakwood. Creel has failed to state a plausible claim for breach of contract.

**SO ORDERED.**

Dated:  April 16, 2012          s/Avern Cohn
                                AVERN COHN
                                UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Monday, April 16, 2012, by electronic and/or ordinary mail.

                                s/Julie Owens
                                Case Manager, (313) 234-5160